UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STATE OF MAINE, et al., )<br>)<br>    Plaintiffs, )<br>)<br>             v. )<br>)<br>ANDREW WHEELER, Acting )<br>Administrator U.S. Environmental )<br>Protection Agency, et al., )<br>)<br>    Defendants, and )<br>)<br>HOULTON BAND OF MALISEET )<br>INDIANS and PENOBSCOT )<br>NATION, )<br>)<br>    Intervenor-Defendants. ) | 1:14-cv-00264-JDL |

**ORDER ON EPA'S MOTION FOR VOLUNTARY REMAND AND
PENOBSCOT NATION'S MOTION TO AMEND ANSWER**

Plaintiffs, the State of Maine and Paul Mercer in his capacity as Commissioner of the Maine Department of Environmental Protection (collectively, "Maine"), seek judicial review of the U.S. Environmental Protection Agency's ("EPA") February 2015 disapproval of several of Maine's Water Quality Standards as being insufficiently protective of tribalサステナンス sustenance fishing rights in tribal waters. The Houlton Band of Maliseet Indians and the Penobscot Nation (collectively, the "Tribes") were granted the right to intervene to defend the EPA's February 2015 decision. The EPA now asserts that it has decided to revise, and not defend, that decision, and moves to

remand the case so that it may do so.[1] Maine agrees that the case should be remanded, but only if the EPA's February 2015 decision is vacated by the Court. Both the Houlton Band of Maliseet Indians and the Penobscot Nation oppose the EPA's motion. The Penobscot Nation further moves to amend its answer to add a counterclaim against Maine for declaratory and injunctive relief requiring Maine to recognize and protect tribal sustenance fishing rights when setting water quality standards.

## I. BACKGROUND

The Clean Water Act requires states to review their water quality standards at least once every three years and to submit the results of the review to the EPA. *See* 33 U.S.C.A. § 1313(c)(1) (West 2018). In July 2014, Maine brought this action against the EPA, claiming that the EPA had failed to timely approve or disapprove Maine's revised surface water quality standards. ECF No. 1 at 1; ECF No. 7 at 1. In February 2015, the EPA issued a formal decision in which it approved some of Maine's water quality standards and disapproved others, including those standards affecting tribal lands which, it concluded, did not adequately protect tribal fishing rights. ECF No. 30-1; *see also* ECF No. 26. The disapproved standards did not ensure a water quality sufficient to take fish from tribal waters for sustenance.

In response to the EPA's decision, Maine filed a Second Amended Complaint seeking judicial review of the EPA's decision under the Administrative Procedure Act, 5 U.S.C.A. §§ 701-706 (West 2018) (Count I), ECF No. 30 at 48-50, and a declaratory

---

[1] The EPA simultaneously moved for a stay of these proceedings pending the Court's decision on its motion for voluntary remand. ECF No. 139. Because the scheduling order entered August 2, 2018 (ECF No. 148) suspended all briefing deadlines on Maine's Motion for Judgment on the Administrative Record until further order of the Court, which effectively stayed the proceedings, I treat the EPA's motion for a stay as moot.

judgment under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201-02 (West 2018) (Count II), ECF No. 30 at 50-52, concerning the EPA's interpretation of the Clean Water Act, the Maine Act to Implement the Indian Land Claims Settlement, 30 M.R.S.A. §§ 6201, *et. seq.* (West 2018), and the Maine Indian Claims Settlement Act of 1980, 25 U.S.C.A §§ 1721, *et. seq.* (West 2018). Thereafter, the EPA promulgated replacement water quality standards (the "Maine Rule") to protect tribal sustenance fishing rights in Maine. *See* ECF No. 62. The Maine Rule filled the regulatory gap created when the EPA disapproved some of Maine's proposed water quality standards in February 2015 and Maine did not propose any replacements. The Maine Rule became effective on January 18, 2017 and remains in effect today. 40 C.F.R. § 131.43 (2018).

In February 2017, in the wake of the 2016 presidential election and subsequent change of administrations, Maine petitioned the EPA to reconsider its decision, *see* ECF No. 93-1, which led to the granting of a stay of this case from May to December, 2017. In December 2017, the EPA informed the Court that it had "determined not to withdraw or otherwise change any of the decisions that are challenged in this case." ECF No. 109 at 2. On February 16, 2018, Maine filed its Motion for Judgment on the Administrative Record, its opening brief on the merits of its Second Amended Complaint. ECF No. 118. In June 2018, before the EPA responded to Maine's opening brief, Maine and the EPA filed a joint motion for a 30-day stay to engage in settlement talks, which was granted. ECF No. 132. The parties did not reach a settlement, and on July 27, 2018, the EPA filed its motion for voluntary remand, which I now address. ECF No. 139.

## II. ANALYSIS

1.  **Motion for Voluntary Remand**

District courts have broad discretion to grant or deny an agency's voluntary motion to remand. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 381 (D.C. Cir. 2017). Courts "generally grant an agency's motion to remand so long as the agency intends to take further action with respect to the original agency decision on review." *Util. Solid Waste Activities Grp. v. Envtl. Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (internal quotation marks omitted). Although an "agency may seek a remand because of intervening events outside of the agency's control[,] . . . even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028-29 (Fed. Cir. 2001). However, in deciding a voluntary motion for remand, a court must "consider whether remand would unduly prejudice the non-moving party." *Util. Solid Waste*, 901 F.3d at 436.

Although the EPA has not specified what its revised decision will be, it has made clear that it intends to make substantive changes to the original agency decision that is challenged in this case.[2] "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Ass'n of Home Builders v. Envtl. Prot. Agency*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S.

---

[2] The EPA states that it will "change, and not . . . defend, its decisions to: (1) interpret and approve Maine's fishing designated use in its [water quality standards] to mean sustenance fishing in the waters in the Maine Tribes' Reservations and trust lands; (2) approve provisions in the Maine Implementing Act as a sustenance fishing designated use under the [Clean Water Act] in the inland waters of the Penobscot Indian Nation's and Passamaquoddy Tribe's Reservations; and (3) disapprove Maine's human health criteria in its [water quality standards] as not sufficiently protective of the sustenance fishing designated uses in Indian waters." ECF No. 139 at 2.

502, 514-15 (2009)), and the law favors remand to allow such reevaluation. *See Util. Solid Waste*, 901 F.3d at 436. The EPA has also identified several intervening events that it believes justify remand, *see SKF USA*, 254 F.3d at 1028-29, including the replacement of three key EPA officials; an April 2018 letter from the Department of the Interior revising its earlier letter upon which the EPA's February 2015 decision was based in part; and the filing of Maine's opening brief for judgment on the administrative record which, the EPA claims, helped "crystalize[] the issues." ECF No. 157 at 13; ECF No. 139 at 2-3. These intervening events present a reasonable basis for the EPA to have "doubts about the correctness of its decision," *SKF USA*, 254 F.3d 1029, and I conclude that the requested remand is therefore justified.

In addition, there is no evidence of undue prejudice to the non-moving parties. The EPA contends that a remand will not harm the Tribes because "all parties appear to agree that the Maine Rule, which established [protections for] sustenance fishing, should stay in place during remand[,]" and that "the Tribes will not suffer any hardship during remand." ECF No. 157 at 15. Accordingly, the remand in this case will be conditioned upon the EPA (1) continuing the Maine Rule in effect during the remand period, and (2) not taking any action that would terminate or undermine the effectiveness of the Maine Rule without prior Court approval. The Maine Rule, which implements the protection of water rights that the Tribes seek, will therefore remain in effect during the remand period, and the regulatory status quo will be unaffected during the EPA's reevaluation of its decision.

The Tribes argue, however, that the EPA's reevaluation on remand will interfere with their ability to vindicate their rights because their claims involve

questions of statutory construction that are intertwined with any exercise of agency discretion going forward. *See Util. Solid Waste*, 901 F.3d at 436-37; *see also SKF USA*, 254 F.3d at 1029. In other words, the Tribes argue, the EPA cannot revise its decision without interpreting the Clean Water Act, the Maine Act to Implement the Indian Land Claims Settlement, and the Maine Indian Claims Settlement Act of 1980 in a manner that is contrary to the interpretation the tribes seek to advance in this case. However, apart from raising this argument, the Tribes have failed to specify how the questions of statutory interpretation relate to the issues the EPA will reevaluate on remand. In addition, bifurcating the case between issues of pure statutory interpretation subject to judicial adjudication and issues of agency discretion—a proposal suggested by counsel for the Penobscot Nation—would likely complicate these matters. It is not unusual for questions of statutory interpretation and the exercise of agency discretion to overlap. Thus, I am not persuaded that bifurcation is warranted or that a remand will unduly prejudice the Tribes' ability to press their statutory arguments.

Maine argues that the Court should, in addition to granting the EPA's remand request, also vacate the EPA's February 2015 decision while the EPA reconsiders, although it concedes that the First Circuit has yet to address whether it is within a district court's jurisdiction to vacate an agency's decision without first deciding the merits. ECF No. 151 at 3. Vacatur is inappropriate: first, vacatur would allow for the "repeal [of] a rule without public notice and comment [and] without judicial consideration of the merits." *Nat'l Parks Conservation Ass'n v. Salazar*, 660 F. Supp. 2d 3, 5 (D.D.C. 2009). Second, and contrary to Maine's argument, it is not evident

that the Department of Interior's April 2018 opinion letter contradicts or undermines the EPA's February 2015 decision. Indeed, the EPA affirmatively denies that there is any error in connection with its February 2015 decision resulting from the Department of Interior's revised opinion letter. *See Limnia,* 857 F.3d at 387 ("[A]n agency need [not] confess error or impropriety in order to obtain a voluntary remand.").

For the reasons discussed above, the EPA's motion for voluntary remand is granted without vacatur, and the case will be stayed until December 3, 2019, for the EPA to reconsider its decision. The Court will retain jurisdiction during the period of remand.

**2. Motion to Amend Answer**

The Penobscot Nation moves to amend its answer to add a counterclaim for declaratory and injunctive relief that largely mirrors Count II of Maine's Second Amended Complaint. *Compare* ECF No. 141-1 at 41-43 *with* ECF No. 30 at 50-52. The issue raised by the proposed counterclaim and, in part, Count II of the Second Amended Complaint, is whether the Penobscot Nation has a statutory right to engage in sustenance fishing which carries with it a right to water quality that ensures that there will be fish of sufficient quality and quantity to safely sustain the tribe. *See* ECF No. 141-1 at 41-43; ECF No. 30 at 50-52. That right would require Maine to promulgate water quality standards protecting sustenance fishing within reservation waters.

Under Fed. R. Civ. P. 15(a)(2), "[t]he court should freely give leave [to amend a pleading] when justice so requires." Leave to amend should be granted in the

absence of reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Here, no prejudice or other cause to deny the motion has been shown. The Penobscot Nation's motion is effectively unopposed: neither the Houlton Band of Maliseet Indians nor the EPA takes a position on the motion, and Maine only opposes the amendment if the Court were to remand to the EPA with vacatur, which, as discussed above, it does not. Furthermore, the proposed counterclaim seeks only an inverse declaration from the one already sought by Maine in its Second Amended Complaint, and thus the amendment does not substantively alter the case. *See* ECF No. 30 at 50-52; ECF No. 152 at 4. The Penobscot Nation's motion to amend is therefore granted.

### III. CONCLUSION

The U.S. Environmental Protection Agency's motion for a voluntary remand (ECF No. 139) is **GRANTED**, except that the EPA's request for a stay of proceedings pending the Court's decision on its motion for voluntary remand is **DENIED** as moot (*see supra* note 1). The case is remanded without vacatur and is stayed until December 3, 2019, so that the EPA may reconsider its February 2015 decision, during which time the Court will retain jurisdiction and the EPA shall not take any action that would terminate or undermine the effectiveness of the Maine Rule without prior Court approval. It is further **ORDERED** that the parties work together to prepare a proposed scheduling order which will require the EPA to periodically report to the

Court on the status of its reconsideration and all actions taken during the remand period. If the parties cannot agree on a schedule, they shall each file a proposed schedule with the Court by December 28, 2018.

The Penobscot Nation's Motion to Amend its Answer to File Counterclaim (ECF No. 141) is **GRANTED**.

**SO ORDERED.**

**Dated this 3rd day of December, 2018.**

                                                  /s/ JON D. LEVY
                                             **U.S. DISTRICT JUDGE**